IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHENZHEN JISU TECHNOLOGY CO., LTD.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, and UNINCORPORATED ASSOCIATES IDENTIFIED ON SCHEDULE "A,"<br><br>　　　　　Defendants. | Case No.: 2:25-cv-06641<br><br>**JURY TRIAL DEMANDED** |

## VERIFIED COMPLAINT

Plaintiff Shenzhen Jisu Technology Co., Ltd ("Plaintiff") hereby brings the present action against all Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associates Identified on **Schedule A** (collectively, "Defendants"), attached hereto, as follows:

### JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to the provisions of the Patent Act, 35 U.S.C. § 1 *et seq.*, 28 U.S.C. § 1338(a)-(b) (exclusive patent claim jurisdiction), and 28 U.S.C. § 1331 (original federal question jurisdiction). This Court has original subject matter jurisdiction over the false designation of origin claim asserted in this action pursuant to the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*, (the "Lanham Act"), and 28 U.S.C. §§ 1338(a) and 1331. This Court has supplemental jurisdiction over Plaintiff's state law claims for unfair competition and unjust enrichment pursuant to 28 U.S.C. § 1367(a).

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because Defendants structure

their business activities so as to target consumers in the United States, including New Jersey, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to New Jersey residents by setting up and operating e-commerce stores that target United States consumers, offer shipping to the United States, including New Jersey, accept payment in U.S. dollars and, on information and belief, sell products which infringe Plaintiff's patented inventions, as described below (collectively, the "Unauthorized Products") to residents of New Jersey. Each of the Defendants is committing tortious acts in New Jersey, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of New Jersey.

**INTRODUCTION**

3.      Plaintiff files this case to prevent e-commerce store operators who infringe upon Plaintiff's patented invention from further selling and/or offering for sale the Unauthorized Products. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists between them, and that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiff's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their infringing operation. Plaintiff is forced to file this action to combat Defendants' infringing of its patented invention, as well as to protect consumers from

purchasing Unauthorized Products over the internet. Plaintiff has been, and continues to be, irreparably damaged through loss of market share and erosion of Plaintiff's patent rights because of Defendants' actions and therefore seeks injunctive and monetary relief.

## THE PARTIES

4. Plaintiff, Shenzhen Jisu Technology Co., Ltd., is a Chinese corporation with its principal place of business at 4/F, Building C, Banweiyuan, 5 Yongxiang Rd., Bantian St., Loggan District, Shenzhen, China, and is the owner of the patents asserted in this action.

5. Plaintiff is the owner of all right, title, and interest in U.S. Patent No. ▇▇▇▇▇▇ ("Plaintiff's Patent"). A true and correct copy of Plaintiff's Patent is attached hereto as **Exhibit 1**.

6. Plaintiff's Patent issued on ▇▇▇▇▇▇. The Plaintiff's Patent was and is valid and enforceable at all times relevant to this action and is entitled to a presumption of validity under 35 U.S.C. § 282. Plaintiff's Patent is a design patent directed to a ▇▇▇▇▇▇.

7. Plaintiff researches, develops, designs and patents inventions and advancements in the field of ▇▇▇▇▇▇. Among these inventions are ▇▇▇▇▇▇ ("Plaintiff's Products"). Plaintiff's novel inventions and subsequent improvements and development of unique designs of Plaintiff's Products has led to Plaintiff filing for and having been issued numerous patents, including Plaintiff's Patent that is at issue in this matter.

8. Plaintiff developed a product line of Plaintiff's Products, which includes products that embody Plaintiff's Patent, under the brand ▇▇▇▇ and sells Plaintiff's Products through its various stores on third-party marketplaces, including Amazon. Examples of Plaintiff's Products are shown below:

**REDACTED**

*Figure 1: Plaintiff's Products*

9.      On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores on Amazon.com under the Seller Aliases listed in **Schedule A** attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their infringing network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

**DEFENDANTS' UNLAWFUL CONDUCT**

10.     The success of Plaintiff's Products has resulted in significant infringement of Plaintiff's Patent. Because of this, Plaintiff has implemented an anti-infringement program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Plaintiff has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like Amazon.com, Inc. ("Amazon"), eBay, Inc. ("eBay"), WhaleCo, Inc. ("Temu"), and Walmart, Inc. ("Walmart"), including the e-commerce stores operating under

the Seller Aliases on Amazon. True and correct copies of the screenshot printouts showing active listings of the Unauthorized Products sold by Defendants through Amazon operating under the Seller Aliases reviewed are attached as **Exhibit 2**.

11. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online infringers. *See* **Exhibit 4** at 4 - "The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States," John Dunham & Associates. Because counterfeit products sold by offshore online counterfeiters do not enter normal retail distribution channels, it is estimated that the U.S. economy lost more than 300,000 full-time jobs in the wholesale and retail sectors alone in 2020. *Id.* at 12. When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of counterfeit products was estimated to cost the United States economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and benefits. *Id.* at 3, 13. Additionally, it is estimated that the importation of counterfeit goods costs the United States government nearly $7.2 billion in personal and business tax revenues in the same period. *Id.* at 3.

12. Online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 5** at 186 - "Alibaba, Amazon, and Counterfeiting in the Age of the Internet," 40 NW. J. INT'L L. & BUS. 157, 186 (2020), Daniel C.K. Chow.

13. Also, it was found that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." **Exhibit 6** at 12, 22 - "Combating Trafficking in Counterfeit and Pirated Goods, Report to the President of the United States," U.S. Department of Homeland Security's Office of Strategy, Policy & Plans, Jan. 24, 2020. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. *Id.* at 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 5** at 186-187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the counterfeit seller] to reappear under a new false name and address in short order." *Id*. at 161.

14. The very same concerns regarding anonymity, multi-storefront infringers, and slow and ineffective notice and takedown marketplace procedures impact Plaintiff's enforcement efforts when trying to assert its own patent rights.

15. Defendants have targeted sales to New Jersey residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including New Jersey, accept payment in U.S. dollars and, on information and belief, sell and/or offer for sale Unauthorized Products to residents of New Jersey.

16. Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars in multiple ways, including via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish their stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants use of Plaintiff's Patent, and none of the Defendants are authorized retailers of Plaintiff's Products.

17. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

18. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their infringing operation, and to avoid being shut down.

19. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other common features, such as

registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia of being infringing to one another, thus suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

20. E-commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by intellectual property owners. Websites like sellerdefense.cn also tip off e-commerce store operators like Defendants of new intellectual property infringement lawsuits filed by intellectual property owners, such as Plaintiff, and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

21. Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiff's enforcement. E-commerce store operators like Defendants maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to plaintiffs.

22. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff have, jointly and severally, knowingly and willfully infringed Plaintiff's Patents in connection with the use and/or manufacturing of Unauthorized

Products and distribution, offering for sale, and sale of Unauthorized Products into the United States and New Jersey over the Internet.

23. Defendants' unauthorized manufacturing and/or use of the invention claimed in Plaintiff's Patent in connection with the distribution, offering for sale and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including New Jersey, is likely to cause, and has caused, loss of market share and erosion of Plaintiff's patent rights is irreparably harming Plaintiff.

## COUNT I
## PATENT INFRINGEMENT OF PLAINTIFF'S PATENT
### (35 U.S.C. § 271)

24. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

25. As shown, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use Unauthorized Products that infringe directly and/or indirectly Plaintiff's Patent.

26. As shown in the claims chart attached as **Exhibit 3**, the Unauthorized Products being sold by Defendants infringe Plaintiff's Patent, in that the Unauthorized Products are substantially similar to, or at least a colorable imitation of the claimed design of Plaintiff's Patent.

27. Specifically, Defendants have infringed and continue to infringe the claimed design of Plaintiff's Patent by making, using, importing, selling, and/or offering to sell infringing goods in the United States without authorization or license from Plaintiff.

28. Defendants have profited by their infringement of Plaintiff's Patent, and

Plaintiff has suffered actual harm as a result of Defendants' infringement.

29. As a direct and proximate result of Defendants' infringement, Plaintiff has suffered irreparable harm and monetary and other damages in an amount to be determined. Defendants' infringement of Plaintiff's Patent in connection with the offering to sell, selling, or importing of products that infringe Plaintiff's Patent, including such acts into the State of New Jersey, is irreparably harming Plaintiff. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented inventions as well as the lost sales and loss of repeat sales stemming from the infringing acts.

30. Defendants' infringement has been and continues to be willful. Accordingly, Plaintiff is entitled to treble damages under 35 U.S.C. § 284 and this is an exceptional case under 35 U.S.C. § 285.

31. Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283. Unless Defendants are preliminarily and permanently enjoined by this Court from continuing their infringement of Plaintiff's Patent, Plaintiff will continue to suffer additional irreparable harm, including loss of market share and erosion of patent rights.

32. Plaintiff is entitled to recover damages adequate to compensate for the infringement, pursuant to 35 U.S.C. § 284, in no event less than a reasonable royalty and, pursuant to 35 U.S.C. § 289, Defendants' total profit.

## COUNT II
## UNFAIR COMPETITION
## (15 U.S.C. §1125(a))

33. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

34. Despite Plaintiff having a valid and enforceable patent, which is embodied in Plaintiff's Products, and sold to consumers in what should have been an otherwise exclusive

market, Defendants have developed, manufactured, imported, advertised, and/or sold Unauthorized Products that infringe upon Plaintiff's Patent. *See* **Exhibits 2 and 3**.

35. By selling products which infringe upon Plaintiff's Patent, Defendants are attempting to compete for sales with Plaintiff and Plaintiff's Products with products that Defendants are prohibited from selling under U.S. patent law.

36. By selling products which infringe upon Plaintiff's Patent, Defendants are competing for sales against Plaintiff in an unfair and unlawful manner.

37. Defendants' unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale and/or sale of Unauthorized Products creates express and implied misrepresentation that Unauthorized Products were created, authorized, or approved by Plaintiff, allowing Defendants to profit from Plaintiff's goodwill, time, research, development and design of Plaintiff's inventions as embodied in Plaintiff's Patent and in Plaintiff's Products, while causing Plaintiff irreparable and immeasurable injury.

38. On information and belief, Defendants have intentionally and blatantly infringed upon Plaintiff's Patent by selling Unauthorized Products to take unfair advantage of the enormous time, effort, and expense Plaintiff has spent to cultivate a successful market for the invention embodied in Plaintiff's Patent and in Plaintiff's Products in online marketplaces.

39. On information and belief, Defendants have offered to sell and knowingly sold Unauthorized Products with the understanding that, as foreign entities, any enforcement efforts by Plaintiff would be difficult as many countries, including and especially China, make enforcement efforts of foreign intellectual property, e.g., U.S. patents, difficult and collection of any judgments highly improbable.

40. On information and belief, to the extent enforcement efforts are made against Defendants, Defendants will merely ignore the efforts since they are free to move any assets

out of their marketplace accounts and can easily create new accounts for online marketplaces to sell Unauthorized Products, with little recourse available to Plaintiff.

41. Defendants' acts, as described herein, violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' sale and/or offer of sale of products which infringe Plaintiff's Patent, constitutes unfair competition.

42. As a result of Defendants' unlawful acts, Plaintiff has been and will continue to be damaged.

43. Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury.

## COUNT III
## UNFAIR COMPETITION
### (NEW JERSEY COMMON LAW AND NJ REV STAT Rev § 17:29B-3)

44. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

45. Plaintiff, by obtaining Plaintiff's Patent, should be the exclusive retailer of products which embody Plaintiff's Patent.

46. Defendants knew or should have known that the Unauthorized Products they were selling infringed upon Plaintiff's Patent.

47. Defendants, by selling Unauthorized Products, are eroding what should be Plaintiff's exclusive market share, due to Plaintiff's acquisition of Plaintiff's Patent.

48. By selling Unauthorized Products, Defendants are trading upon Plaintiff's goodwill, reputation, research, and development.

49. Defendants, through the aforementioned actions, have and continue to engage in unfair competition under New Jersey common law and NJ Rev Stat § 17:29B-3.

50. As a result of Defendants' unlawful acts, Plaintiff has been and will continue to be damaged.

## COUNT IV
## UNJUST ENRICHMENT
## (NEW JERSEY COMMON LAW)

51. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

52. Plaintiff has spent substantial time, money, and resources in development of the invention embodied in Plaintiff's Patent.

53. Plaintiff's Patent greatly improves upon the design of the relevant goods.

54. Plaintiff also spent substantial time, money, and resources in the development of Plaintiff's Products, including selling Plaintiff's Products directly to consumers and through authorized retailers.

55. Defendants traded upon Plaintiff's good will, reputation, research, and development by selling products which infringed upon Plaintiff's Patent.

56. Defendants, by selling Unauthorized Products, eroded Plaintiff's market share.

57. Unauthorized Products include the unique components and/or design elements disclosed in Plaintiff's Patent.

58. Defendants knew or should have known that the Unauthorized Products they were selling infringed upon Plaintiff's Patent and by selling those products they were eroding Plaintiff's market share and trading upon its goodwill, reputation, research, and development.

59. Defendants, by offering for sale and selling Unauthorized Products, improved their own goodwill and market share by trading upon the goodwill, reputation, research, and development of Plaintiff.

60. Defendants, by offering for sale and selling Unauthorized Products through online marketplaces without having any physical location and limited financial accounts in the United States, seeks to compete for customers in the U.S. market without subjecting itself to the laws of the United States or notions of fair competition.

61. On information and belief, Defendants have sold Unauthorized Products, further eroding Plaintiff's market share and trading upon its good will, reputation, research, and development of Plaintiff.

62. Plaintiff has never received any relief for the erosion to its market share or any compensation from Defendants for their use of Plaintiff's goodwill, reputation, research, and development.

63. Defendants have been unjustly enriched because they have denied Plaintiff access to customers it would have otherwise had by participating in what should have been Plaintiff's exclusive market by selling products directly to consumers, products which infringed Plaintiff's Patent, and competing against Plaintiff in the same market.

64. As a result of Defendants' unlawful acts, Plaintiff has been and will continue to be damaged.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. Making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use any products that infringe upon Plaintiff's Patent; and

    b. Aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon Plaintiff's Patent.

2) Entry of an Order that, upon Plaintiff's request, those with notice of the

injunction, including without limitation, any websites and/or online marketplace platforms, such as Amazon, eBay, Temu, and/or Walmart, shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods that infringe Plaintiff's Patents.

3) That Judgment be entered against Defendants finding that they have infringed upon Plaintiff's Patent.

4) That Judgment be entered against Defendants finding that infringement of Plaintiff's Patent has been willful.

5) That Plaintiff be awarded damages for such infringement in an amount to be proven at trial, in no event less than a reasonable royalty pursuant to 35 U.S.C. § 284 and Defendants' total profit pursuant to 35 U.S.C. § 289, together with interests and costs.

6) That Plaintiff be awarded treble damages under 35 U.S.C. § 284 for Defendants' willful infringement of Plaintiff's Patent.

7) A finding that this case is exceptional under 35 U.S.C. § 285.

8) A finding that Defendants engaged in unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

9) A finding that Defendants were unjustly enriched.

10) A finding that Defendants engaged in unfair competition.

11) That Plaintiff be awarded its reasonable attorneys' fees and costs.

12) Award any and all other relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

## CERTIFICATION

Pursuant to Local Civil Rule 11.2, Plaintiffs, through their undersigned counsel, hereby certify that the matter in controversy is not the subject of any other action pending in any Court or of a pending arbitration proceeding, nor is any such action or proceeding presently contemplated to the best of my knowledge and belief.


Dated: June 2, 2025                    Respectfully submitted,

*/s/ John H. Choi*
John H. Choi
John H. Choi & Associates LLC
65 Challenger Road, Suite 100
Ridgefield Park, NJ 07660
Tel. 201.580.6600
Fax. 201.625.1108
Email. jchoi@jchoilaw.com

*Counsel for Plaintiff Shenzhen Jisu Technology Co., Ltd.*

## **VERIFICATION**

I, Liang Meiyu, hereby certify as follows:

1.     I am the legal representative for Shenzhen Jisu Technology Co., Ltd. As such, I am authorized to make this Verification on Shenzhen Jisu Technology Co., Ltd.'s behalf.

2.     I have read the foregoing Verified Complaint and, based on my personal knowledge and my knowledge of information reported to me by subordinates and colleagues who report to me, the factual allegations contained in the Verified Complaint are true.

3.     I certify under penalty of perjury under the laws of the United States of America that the foregoing statements made by me are true and correct.

Executed in Shenzhen, China on _____June 1st_____, 2025

*meiyuLiang*

_____
Liang Meiyu
Shenzhen Jisu Technology Co., Ltd.